UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHERYL DOMMES,

                Plaintiff,

v.                                                                          3:15-CV-0977
                                                                            (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

LACHMAN & GORTON                                            PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                                 MICHELLE L. CHRIST, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Cheryl Dommes, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 19.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 11, 1969. Plaintiff has a high school education, and has past work as a housekeeper, a cashier, an assembler, and a document and imaging processor. Generally, Plaintiff's alleged disability consists of bulging discs in her back and herniated discs in her lower back after a work-related injury from lifting cases of metal parts on July 7, 2005.

### B. Procedural History

On February 1, 2006, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning August 10, 2005. (T. 505.)[1] Plaintiff's application was initially denied on April 5, 2006, and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On March 31, 2008, Plaintiff appeared in a hearing before the ALJ, Dennis O'Leary. (*Id.*) On April 25, 2008, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.*) On May 27, 2008, the Appeals Council denied Plaintiff's request for review, after which Plaintiff filed an action in the United States District Court for the Northern District of New York. (*Id.*) While the action was pending, Plaintiff filed a separate application for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning June 1, 2008. (*Id.*) In the initial determination on October 14, 2008, Plaintiff was found to be disabled as of June 1, 2008. (*Id.*)

On October 23, 2009, pursuant to the consent order entered by the District Court on October 14, 2008, the Appeals Council vacated the ALJ's decision of April 25, 2008, and

---

[1] Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

remanded the matter for further administrative proceedings. (*Id.*) The Appeals Council affirmed the October 14, 2008, determination that Plaintiff was disabled as of June 1, 2008. (*Id.*) Accordingly, the ALJ's decision was limited to the specific time period of August 10, 2005, the alleged onset date, through May 31, 2008. (T. 506.)

On September 29, 2010, Plaintiff appeared in a second hearing before ALJ Elizabeth Koennecke. (*Id.*) On March 14, 2011, the hearing was continued to complete the testimony of medical expert, Donald Goldman, M.D. (*Id.*) On March 30, 2011, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act for the period of August 10, 2005, through May 31, 2008. (*Id.*) On February 25, 2012, the Appeals Council denied Plaintiff's request for review, after which Plaintiff filed an action in the United States District Court for the Northern District of New York. (*Id.*)

On January 29, 2014, the District Court reversed and remanded the matter for further proceedings. (T. 506, 559-72.) On October 28, 2014, the Appeals Council vacated the ALJ's decision of March 30, 2011, and remanded the matter to the ALJ with instructions to conduct further proceedings consistent with the District Court's decision and order. (T. 506, 573-76.) Upon remand, the matter was once again assigned to ALJ Elizabeth Koennecke. (T. 506.)

On May 26, 2015, the ALJ held a supplemental hearing by teleconference. (*Id.*) On June 9, 2015, the ALJ issued a third written decision finding Plaintiff not disabled under the Social Security Act for the period under review. (T. 505-21.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 509-520.) First, the ALJ found that Plaintiff has not engaged in

3

substantial gainful activity since August 10, 2005, the alleged onset date. (T. 509.) Second, the ALJ found that Plaintiff's lumbar spine herniated nucleus pulposus with an annular[2] tear was a severe impairment, but that Plaintiff's obesity, depression, and anxiety were not severe impairments. (T. 510-11.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 511-12.) The ALJ considered Listings 1.00, 1.04, and 11.00. (*Id.*)

Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a limited range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she could lift, carry, push and pull 20 to 30 pounds occasionally and 10 pounds frequently, stand/walk four hours, sit for six hours and occasionally bend." (T. 512-19.) Fifth, the ALJ found that Plaintiff could perform her past relevant work as a document and imaging processor (Document Preparer, DOT number 249.587-018). (T. 519-20.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff could perform. (T. 520.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to comply with the orders of the District Court and Appeals Council upon remand. (Dkt. No. 13, at 4-8 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in weighing the opinions of the treating sources. (*Id.* at 8-18.)

---

[2] Although the ALJ's decision stated that Plaintiff's lumbar spine herniated nucleus pulposus with an "annual" tear was a severe impairment, this appears to be a typographical error. As noted below in Part III.A.i. of this Decision and Order, multiple physicians diagnosed Plaintiff with an "annular" tear. (T. 449, 570.)

Third, Plaintiff argues that the ALJ used an improper standard and improperly assessed Plaintiff's credibility. (*Id.* at 18-19.) Fourth, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because there is no competent medical opinion indicating that Plaintiff can meet the physical demands of the RFC. (*Id.* at 19-20.) Fifth, and finally, Plaintiff argues that the ALJ's step five determination is not supported by substantial evidence. (*Id.* at 20-21.)

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ correctly made a *de novo* decision on remand. (Dkt. No. 19, at 7-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ appropriately evaluated the medical opinion evidence and the ALJ's RFC determination is supported by substantial evidence. (*Id.* at 9-14.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 14-18.) Fourth, Defendant argues that the ALJ properly found that Plaintiff could perform work in the national economy. (*Id.* at 18-19.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.   Whether the ALJ Complied with the Appeals Council's Remand Order in Evaluating the Medical Opinion Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 13, at 4-18 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

7

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey,* 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted.) "ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *Gladle v. Astrue,* 12-CV-0284, 2013 WL 4543147, *3 (N.D.N.Y. 2013) (quoting *Thompson v. Astrue,* 583 F. Supp. 2d 472, 475 [S.D.N.Y. 2008]) (internal quotation marks and citation omitted). "Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Gladle,* 2013 WL 4543147, *3 (internal quotation marks and citation omitted).

The regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand. *See Mortise v. Astrue,* 08-CV-0990, 713 F. Supp. 2d 111, 120-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding, in part, based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule).

Here, as discussed in below in Part ii. of this Decision and Order, the District Court found that the ALJ's decision of March 30, 2011, "gave improper weight to the treating physicians' opinions, which constitutes reversible error." (T. 569.) Accordingly, the District

8

Court remanded this matter for the ALJ to reevaluate the opinions of treating pain management physician Xio Fang, M.D., and treating neurosurgeon Khalid Sethi, M.D., in accordance with the treating physician rule. (T. 569-72.)

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

      i.     **Relevant Medical Evidence of Record**

          a.     **Treating Neurosurgeon Khalid Sethi, M.D.**

On July 24, 2007, Dr. Sethi observed that an MRI examination of Plaintiff's spine on June 20, 2006, showed "significant spondylitic disease at L5-SI" and some attendant foraminal

9

encroachment that is "particularly severe at the L5 level bilaterally." ( T. 128, 141-42.) Dr. Sethi assessed Plaintiff with lumbar spondylolysis L5 with attendant foraminal stenosis (severe, L5 bilateral), and indicated that Plaintiff reported severe mechanical axial discomfort that radiated down her legs. (*Id.*) Dr. Sethi recommended injection therapy and pain management treatment, noting that "the natural history of surgical stabilization for purely mechanical axial discomfort unfortunately has not been particularly meritorious and should remain a last resort." (*Id.*) Dr. Sethi referred Plaintiff to pain management physician Xio Fang, M.D., who began treating Plaintiff on August 14, 2007. (T. 141-42.) Subsequent treatment notes from Dr. Sethi's office in April and May 2008 indicated that a recent injection left Plaintiff in increasing pain, and Plaintiff was not able to work due to her significant amount of pain. (T. 390-91.)

b. **Treating Pain Management Physician Xio Fang, M.D.**

On August 14, 2007, Dr. Fang assessed Plaintiff with spondylolysis, forminal stenosis, and degenerative disc disease. (T. 148-49, 393, 414.) Dr. Fang noted that Plaintiff's prior treatment was not effective, including an epidural injection, physical therapy, and prescription pain killers and muscle relaxants. (*Id.*) Upon examination, Dr. Fang observed that Plaintiff's gait was slow, her lumbar range of motion was "within functional limits but with pain," and she had decreased sensation in the medial aspect of the right leg, and "severe tenderness" in the lumbar paraspinal region and right gluteal region. (T. 149.) Dr. Fang observed that imaging of Plaintiff's spine showed spondylitic disease at the L5-SI level and foraminal encroachment. (*Id.*) Dr. Fang prescribed Lyrica for nerve pain, and added new and increased doses of pain medication. (T. 146, 149.)

On October 15, 2007, Dr. Fang noted that Plaintiff's pain was aggravated with lifting, increased her medication, and limited Plaintiff's lifting maximum to five pounds. (T. 147.) In

10

March 2008, Dr. Fang ordered an additional MRI examination of Plaintiff's lumbar spine based on her increased lower back pain and leg pain. (T. 143.) The MRI examination showed bilateral spondylolysis, a "quite severe narrowing" of the medial aspect of the left L5 neural foramen, lateral disc bulge, and reactive endplate changes from disc degeneration. (T. 143.)

On March 11, 2008, Dr. Fang rated Plaintiff's pain resulting from her medical condition as "severe" and opined that Plaintiff would need to lie down for a substantial period of time during the day. (T. 138-39.) Dr. Fang further opined that Plaintiff could sit for less than six hours, and stand for at least two hours in an eight-hour workday. (T. 139.) Although Plaintiff experienced short-term relief following an epidural injection in April 2008, Dr. Fang indicated that Plaintiff ultimately needed to reduce her work hours from normal eight-hour days to 13 hours per week. (T. 395-99.)

In a deposition on December 23, 2009, Dr. Fang provided a more specific opinion of Plaintiff's work-related limitations and reiterated the basis of his findings. (T. 411-19.) Dr. Fang testified that MRI imaging of Plaintiff's spine showed that she had spondylosis in the low back, mainly at the L5 level, and his findings upon examination of Plaintiff supported that diagnosis. (T. 415, 417-18.) Dr. Fang testified that, upon examination, Plaintiff exhibited tenderness on palpation, sensation deficit, and ambulated with a slow and sometimes antalgic gait. (T. 414-15.) Dr. Fang testified that he treated Plaintiff's pain with various medications, and she was currently taking Celebrex for her back pain. (T. 415.)

Dr. Fang opined that Plaintiff would need to alternate between sitting and standing positions during the workday, could sit and stand for about 30 minutes each before she would need to alternative positions, and would likely miss work about once a week. (T. 416-17.) Dr. Fang further opined that, due to Plaintiff's pain secondary to lumbar spondylosis, her ability to

11

concentrate and sustain work pace would be diminished by 20 percent or more. (*Id.*) Finally, Dr. Fang testified that he did not see a significant difference between Plaintiff's MRI results from June 2006 and March 2008, and opined that Plaintiff's MRI results indicated that she had pain secondary to lumbar spondylosis since at least the time of her June 2006 MRI examination. (T. 414, 418.)

### c. Consultative Examiner Steven Salsburg, M.D.

On March 8, 2006, Dr. Salsburg opined that Plaintiff had moderate to severe difficulty in climbing stairs, bending, lifting, carrying, and kneeling. (T. 118.) Dr. Salsburg further opined that Plaintiff could reach overhead, but heavy lifting was contraindicated, and Plaintiff could sit and stand "for short periods of time." (*Id.*)

Dr. Salsburg noted that Plaintiff reported that her pain had become increasingly severe and sharp, and was present everyday without stopping. (*Id.*) Upon examination, Dr. Salsburg observed that Plaintiff was very tearful and appeared to be in acute pain. (T. 116.) Dr. Salsburg observed that Plaintiff's gait was guarded and broad based, and Plaintiff could walk on her toes on the left side only, and could walk on her heels on both sides. (*Id.*) Dr. Salsburg observed that Plaintiff did not use an assistive device, her station was normal, and she was able to perform a full squat while holding onto the desk. (*Id.*) Dr. Salsburg observed that Plaintiff needed no help changing for the exam, but needed some help getting on and off the examination table. (*Id.*) Upon examination of Plaintiff's thoracic and lumbar spines, Dr. Salsburg observed that Plaintiff had the following ranges of motion: 35 degrees of flexion, five degrees of extension, 15 degrees of lateral flexion on the left, and five degrees on the right. (T. 117.) Dr. Salsburg observed that Plaintiff's lumbosacral rotation was ten degrees to the right and 25 degrees to the left, and Plaintiff had paraspinal tenderness from the T12 to L4-5. (*Id.*) Finally, Dr. Salsburg observed that Plaintiff's straight leg raise was 85 degrees on the right and 95 degrees on the left while

lying down, and was five to ten degrees on the left with no straight leg raise on the right while sitting. (*Id.*)

### d.     Medical Expert Donald Goldman, M.D.

Dr. Goldman testified by telephone at the rehearing on September 29, 2010, and continued on March 14, 2011. (T. 440-79, 482-95.) Dr. Goldman reviewed the medical evidence of record and testified that inconsistencies in the medical evidence informed his opinion that Plaintiff's impairments did not meet or equal a Listing. (T. 448-50.)[3] Additionally, Dr. Goldman provided the following opinion of Plaintiff's physical work-related abilities and restrictions from August 10, 2005, through May 31, 2008. (T. 451-53.)

Regarding Plaintiff's ability to lift and carry, Dr. Fang opined that, "with no injury to her hand[s,] . . . wrist[s,] . . . elbow[s,] . . . neck [or] shoulders, her grip strength normally would be easily 40, 50 pounds. So there's no reason she couldn't handle 20, 25, 30 pounds." (T. 451.) Regarding Plaintiff's ability to sit and stand, Dr. Goldman opined that "[t]here's no reason that she can't sit for at least four to six hours in an eight-hour day," and stand and walk for a combined four hours. (T. 452.) Dr. Goldman further opined that Plaintiff could push, pull, lift, and carry between 20 and 30 pounds, and could only occasionally bend in an eight-hour workday. (T. 452-53.) Dr. Goldman opined that, despite some restrictions, Plaintiff would be able to work. (T. 452.) When asked whether Plaintiff's conditions could cause a level of pain that could prevent someone from working, Dr. Goldman testified that many people with Plaintiff's conditions never have a problem while others are rendered incapable of working. (T. 463.)

---

   [3]     Dr. Goldman testified that there were "some inconsistencies or lack of records at least for a portion of this period between 2005 and 2008." (T. 448-49.)

Dr. Goldman testified that the June 2006 MRI of Plaintiff's spine "indicates that Plaintiff has two different kinds of problems in the same spine. One is a herniated disc and one is an annular tear." (T. 449.) Dr. Goldman further testified that he did not understand why surgery was not seriously considered until years after Plaintiff's injury because her conditions likely could have been treated by surgical procedures. (*Id.*) Additionally, Dr. Goldman questioned the basis for Dr. Sethi and Dr. Fang's assessments, and stated that the record did not contain an assessment of whether Plaintiff could walk, or go up and down stairs. (T. 450-51.)

Regarding Dr. Sethi's impression of Plaintiff's impairments, Dr. Goldman testified that he did not disagree with its accuracy, but questioned its significance "from a functional point of view." (R. 463.) Regarding Dr. Fang's opinion, Dr. Goldman testified that "there's virtually no examination," and Dr. Fang's findings were based upon "symptomatic assessment." (T. 455.) Notwithstanding, Dr. Goldman acknowledged that Plaintiff's impairments could limit her lifting ability to five pounds, could cause pain, and could affect Plaintiff's concentration and work pace, as opined by Dr. Fang. (T. 494-96.)

Regarding consultative examiner Dr. Salsburg's opinion, Dr. Goldman testified that some of the functional limitations opined by Dr. Salsburg "are easy to justify and some are not easy to justify." (T. 457.) For example, Dr. Goldman testified that Dr. Salsburg's assessment lacked "significant, objective findings" that might be expected upon examination of an individual with moderate to severe limitations. (T. 457-58.) Dr. Goldman further testified that Dr. Salsburg's finding that Plaintiff had a significant loss of motion in her spine was inconsistent with his findings that she could perform a full squat, needed no help dressing, and needed no help getting on and off the examination table. (T. 451-52.)

### ii.     The ALJ's Decision of March 30, 2011

In her first decision on this matter, the ALJ afforded "some" weight to the medical assessments of Dr. Fang, Dr. Sethi, and Dr. Salsburg, though it was "considerably less weight" than she afforded to Dr. Goldman's opinion, which she afforded "greater weight." (T. 189, 600.) However, upon review of the ALJ's decision, the District Court found that it was unclear that the ALJ afforded any weight at all to the opinions of Dr. Fang, Dr. Sethi, and Dr. Salsburg. (T. 571.) Moreover, the District Court found that, even if the ALJ properly relied on the treating physicians' assessments to some extent, it was unclear how much weight the ALJ assigned to the particular portions of their opinions. (*Id.*) Accordingly, the District Court found that the ALJ "gave improper weight to the treating physicians' opinions, which constitutes reversible error." (T. 569.)

The District Court rejected Defendant's argument that the ALJ properly afforded less than controlling weight to Dr. Fang and Dr. Sethi's opinions based on a lack of objective findings, noting that the Second Circuit has held that a lack of specific clinical findings alone does not allow an ALJ to discredit the opinion of a treating physician. (T. 570) (citing *Clark v. Comm'r of Soc. Sec.,* 142 F.3d 115, 118, [2d. Cir 1998]; *Schaal v. Apfel,* 134 F.3d 496, 505 [2d Cir. 1998]). The District Court further noted that "to the extent that the ALJ relied on Dr. Goldman's assertions that the record was insufficient, it was her 'affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel.'" (T. 569) (quoting *Clark,* 142 F.3d at 118).

In any event, the District Court found that the findings of the treating and consultative physicians in the record were generally consistent. (T. 570.) More specifically, the District Court noted that multiple physicians and examining sources assessed Plaintiff with spondylolysis

15

and/or spondylolisthesis, disc herniation and annular tear, foraminal narrowing at the L5 level that was worse on the left side than on the right, and disc bulging; and opined that Plaintiff was limited to sitting and standing for thirty minutes at a time; and had a limited ability to bend. (*Id.*) Moreover, the District Court noted that, while Dr. Goldman expressed uncertainty regarding some of the medical assessments of record, he acknowledged that Plaintiff's impairments could limit her lifting ability to five pounds, could cause pain, and could affect Plaintiff's concentration and work pace. (*Id.*) The District Court further noted that, when asked whether Plaintiff's conditions could cause a level of pain that could prevent someone from working, Dr. Goldman testified that many people with Plaintiff's conditions never have a problem while others are rendered incapable of working. (T. 570-71.)

Finally, the District Court noted that Dr. Fang and Dr. Sethi treated Plaintiff on multiple occasions and were specialists in their respective fields of medicine, and their opinions were well supported, sufficiently explained, and generally consistent with the record as a whole. (T. 570-71) (referencing the regulatory factors set forth in 20 C.F.R. §§ 404.1527[c], 416.927[c]; *Halloran*, 362 F.3d at 32). The District Court further noted that the ALJ did not assert that the diagnostic techniques used by Dr. Fang and Dr. Sethi were not medially accepted, and the District Court determined that there was not substantial evidence to support such a conclusion. (*Id.*) (referencing the treating physician rule that "an ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record") (internal quotation marks, brackets, and citations omitted).

Accordingly, the District Court determined that the ALJ's failure to (1) afford proper weight to the opinions of treating physicians Dr. Fang and Dr. Sethi, (2) reconcile the opinion of

16

the testifying consultative examiner's opinion with the evidence of record, and (3) affirmatively investigate any remaining inconsistencies in the record constituted reversible error and required remand. (*Id.*)

### iii. The ALJ's Decision of June 9, 2015

The Court finds that the ALJ's second decision in this matter suffers from the same reversible error as her first decision. Despite acknowledging that the District Court reversed her previous decision on the basis of the treating source opinions, the ALJ once again afforded less than controlling weight to the treating source opinions and afforded "the greatest weight" to the opinion of non-examining medical expert Dr. Goldman. (T. 512-514, 517.) More specifically, the ALJ afforded "no evidentiary weight" to Dr. Fang's opinion that (1) Plaintiff was limited to lifting five pounds, (2) Plaintiff's ability to concentrate and sustain work pace were diminished by 20 percent, and (3) Plaintiff would likely miss work at least once a week. (T. 507, 512.) The ALJ stated that "the balance of Dr. Fang's assessment is given some evidentiary weight." (T. 513.)

First, the District Court previously noted that Dr. Goldman acknowledged that Plaintiff's impairments could limit her lifting ability to five pounds, could cause pain, and could affect Plaintiff's concentration and work pace, as opined by Dr. Fang. (T. 570.) Moreover, the District Court found that this opinion is consistent with the other medical opinions and Plaintiff's testimony. (*Id.*) Accordingly, the ALJ erred in affording no weight to these portions of Dr. Fang's opinion upon remand. 20 C.F.R. §§ 404.977(b), 416.1477(b); *Mortise*, 713 F. Supp. 2d 111 at 120-24.

Second, as the District Court found in the previous decision on this matter, the Court finds that it is again unclear that the ALJ afforded *any weight at all* to the balance of Dr. Fang's

17

opinion. For example, Dr. Fang's opinion restricted Plaintiff to sitting for less than six hours in an eight-hour workday, which limited her to less than sedentary work,[4] yet the ALJ determined that Plaintiff had the RFC to perform a range of light work. (T. 139, 512-19.) Moreover, the ALJ's RFC did not incorporate limitations from Dr. Fang's opinion including alternating between sitting and standing positions approximately every 30 minutes. (T. 139, 416-17.)

Third, the ALJ once again relied on Dr. Goldman's opinion without affirmatively investigating any inconsistencies in the record as instructed by the remand orders. (T. 571, 573-76.) Moreover, it appears that Dr. Goldman may have misinterpreted some of the evidence of record. For example, Dr. Goldman stated that the record did not contain an assessment of whether Plaintiff could walk or go up and down stairs. (T. 451.) However, Dr. Fang observed that Plaintiff's gait was slow and antalgic; and Dr. Salsburg observed that Plaintiff's gait was guarded and broad based, and opined that Plaintiff had moderate to severe difficulty in climbing stairs. (T. 116, 118, 149, 414-15.) Additionally, Dr. Goldman testified that Dr. Salsburg's finding that Plaintiff had a significant loss of motion in her spine was inconsistent with his findings that she could perform a full squat and needed no help getting on and off the examination table. (T. 452-52.) However, Dr. Salsburg found that Plaintiff performed a full squat *while holding onto the desk* and *needed some help* getting on and off the examination table. (T. 116.) Finally, Dr. Goldman testified that he did not understand why surgery was not seriously considered until years after Plaintiff's injury, however Dr. Sethi's treating records expressly stated that "the natural history of surgical stabilization for purely mechanical axial

---

[4] Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, 1983 WL 31251 (1983).

discomfort unfortunately has not been particularly meritorious and should remain a last resort."
(T. 141-42, 449.)

For these reasons, the Court will not remand this matter for further consideration. Rather, the Court will order remand solely for calculation of benefits because the ALJ once again failed to follow the remand order to follow the treating physician rule. 20 C.F.R. §§ 404.977(b), 416.1477(b); *see Mortise*, 713 F. Supp. 2d 111 at 120-24 (remanding solely for calculation of benefits based on the ALJ's failure to comply with the remand order to follow the treating physician rule).

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]). Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, the Second Circuit has indicated that remand for further development of the evidence is warranted. *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). However, where the Court "has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." *Rosa,* 168 F.3d at 83. A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.3d 225, 235 (2d Cir. 1980); *accord, Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2002).

Here, the Appeals Council has remanded this matter to an ALJ three times, including twice to the same ALJ, and Plaintiff initially applied for Disability Insurance Benefits and

19

Supplemental Security Income more than ten years ago. (T. 505-07.) Under the circumstances, the Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Therefore, a remand is ordered solely for the calculation of benefits.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for a calculation of benefits consistent with this Decision and Order.

Dated: December 6, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge